CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 02, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| APRIL SILER, Administrator of the Estate of HOLLY LYNN PUGH, | ) | |
| Plaintiff, | ) | Civil Action No. 7:26-cv-00448 |
| v. | ) | **MEMORANDUM OPINION** |
| WESTERN VIRGINIA REGIONAL JAIL AUTHORITY, *et al.*, | ) | By: Hon. Thomas T. Cullen<br>United States District Judge |
| Defendants. | ) | |

---

On June 5, 2026, Plaintiff April Siler, by counsel, filed this action as Administrator of the Estate of Holly Lynn Pugh ("Ms. Pugh") against Defendants Western Virginia Regional Jail Authority ("WVRJA"), Wexford Health Sources, Inc. ("Wexford"), several individual WVRJA and Wexford employees, and three categories of individual "Doe" defendants: John and Jane Doe Western Virginia Regional Jail ("WVRJ") Correctional Officers, John and Jane Doe Medical Providers, and John and Jane Doe WVRJ Guard Supervisors. (*See generally* Compl. [ECF No. 1].) Siler asserts claims under 42 U.S.C. § 1983 and Virginia law. (*See generally* First Am. Compl. ("FAC") [ECF No. 20].) Her claims arise out of Ms. Pugh's treatment for medical conditions and conditions of confinement while incarcerated at WVRJ from February 18, 2024, until her death on July 12, 2024. (*See generally id.*)

The matter is before the court on Siler's Motion for Leave to File a Second Amended Complaint ("SAC") (ECF No. 31) and Motion to Extend Time to Serve Individual Defendants and for Expedited, Limited Identity and Service Disclosures. (ECF No. 32.) Because Siler's

proposed amendments relate back to the Original Complaint and she has demonstrated good cause, the court will grant both motions.

## I. <u>STATEMENT OF FACTS AND PROCEDURAL BACKGROUND</u>

Siler is the appointed Administrator of the Estate of Holly Lynn Pugh. (FAC ¶ 1.) Ms. Pugh, who suffered from serious and chronic gastrointestinal conditions, was a pretrial detainee at WVRJ. (*Id.* ¶ 12–13). Wexford was under contract with WVRJA to provide medical care to detainees at WVRJ. (*Id.* ¶ 3.) From February 18, 2024, to July 12, 2024, Ms. Pugh rotated between incarceration at WVRJ and hospitalization at Roanoke Memorial Hospital ("RMH") due to her medical conditions. (*Id.* ¶ 12.) Siler's FAC alleges that WVRJ correctional officers and Wexford medical care providers failed to administer medical care, place Ms. Pugh in medical segregation, and conduct timely evaluations despite having knowledge of her medical diagnoses, medications, and need for ongoing care. (*Id.* ¶¶ 12–32.) Siler further claims that Defendants "falsely documented" Ms. Pugh's inability to accept medication as "refusal," (*id.* ¶¶ 19, 32), "mocked Ms. Pugh's condition," and ignored Ms. Pugh's fellow inmates' reports that "Ms. Pugh was gravely ill and required immediate medical attention." (*Id.* ¶¶ 23–24.)

Siler alleges that, after Ms. Pugh's discharge from RMH on July 7, 2024, Ms. Pugh "was left to languish in soiled and wet linens without timely assistance from staff," and that correctional officers and medical staff failed to intervene despite reports from inmates that Ms. Pugh "was dying, screaming for help, and required emergency care." (*Id.* ¶¶ 33–34.) Siler claims that Defendants dismissed her condition as "routine" withdrawal symptoms and failed to provide medical care based on this erroneous belief. (*Id.* ¶ 35.) On July 12, 2024, Ms. Pugh

died of a spontaneous esophageal rupture, a condition that Siler claims Ms. Pugh would have survived had she received prompt treatment and antibiotics. (*Id.* ¶¶ 36–38.)

Siler's claims under 42 U.S.C. § 1983 and Virginia law arise out of Ms. Pugh's alleged mistreatment at WVRJ during this period of her incarceration. Siler alleges that the individual and supervisory Wexford and WVRJ defendants violated Ms. Pugh's Fourteenth Amendment right to adequate medical care and safe conditions of confinement (*id.* ¶¶ 44–51), and she asserts a *Monell* [1] claim against Wexford and WVRJA (*id.* ¶¶ 52–60.) She also asserts a claim for gross negligence under the Virginia Wrongful Death Act against the individual defendants and WVRJA (*id.* ¶¶ 61–65) and a claim for conscious pain and suffering under Virginia's survivorship statute against the individual defendants and WVRJA (*id.* ¶¶ 66–69.)

Siler filed her FAC as of right on July 13, 2026, adding the *Monell* claim against WVRJA. (ECF No. 20.) That same day, Siler's counsel emailed counsel for Wexford and WVRJA to request a Rule 26(f) conference, circulated Plaintiff's own disclosures and proposed discovery plan, and made repeated attempts to schedule this conference despite Defendants' purported delays in responding to Plaintiff's requests for information. (Siler Decl. ¶¶ 7–17 [ECF No. 42-1].) On July 27, 2026, WVRJA filed a motion to dismiss the FAC. (ECF No. 23.) By that date, Siler had not yet received a response from Defendants regarding her July 13, 2026, email, so she sent a renewed request for a conference. (Siler Decl. ¶ 8.) The parties conferred on August 4, 2026, and again on August 17, 2026, but, according to Siler, counsel for WVRJA initially refused to engage in Rule 26(a)(1) initial disclosures. (Siler Decl. ¶ 11.) On August 7, 2026, Siler sent a letter to WVRJA's counsel requesting information specific to Ms. Pugh and a

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

defined list of employees responsible for Pugh's care during the relevant period of her incarceration. (Siler Decl. ¶¶ 12–15.) On August 17, 2026, Defendants supplemented employee rosters that Siler had received through a FOIA request in April 2025, with "conduct-specific" security round records including critical information that identified the housing units and bunks to which Ms. Pugh had been assigned during the relevant period of her incarceration. (Siler Decl. ¶¶ 12, 17, 18.) On August 24, 2026, WVRJA provided additional security logs to supplement the records provided on August 17, 2026. (*See* ECF No. 41-1 at 10.)

On August 22, 2026, Siler filed the present motions. The first motion requests leave to file a proposed SAC that substitutes certain "Doe" defendants with individuals identified through Defendants' disclosure of records. (*See* ECF No. 31.) She also filed a motion requesting an extension of time to serve the newly named defendants and a period of limited, expedited discovery to obtain the necessary information to effectuate service and identify any remaining Doe defendants. (*See* ECF No. 32.) Wexford and WVRJA oppose the motion to amend, arguing that the two-year statute of limitations applicable to Siler's claims has passed and that the claims against the newly named defendants do not relate back to the Original Complaint. (*See* Wexford's Br. Opp. Pl.'s Mot. ("Wexford's Br.") [ECF No 40]; WVRJA's Br. Opp. Pl's. Mot. ("WVRJA's Br.") [ECF No. 41].) Wexford further argues that the amendments will result in undue prejudice to Wexford (Wexford's Br. at 6), and WVRJA opposes the motion on futility grounds as to the merits of Siler's claims. (WVRJA's Br. at 6–8.) WVRJA also opposes Siler's motion to extend time to serve and to conduct expedited discovery, claiming that Siler has failed to show good cause for her delay in suing the named defendants.

Siler, in turn, contends that her amendments *do* relate back to the Original Complaint, and in support of her motion for an extension of time and request for discovery, cites an information gap created by Defendants' exclusive control over the information she seeks and their purported continued delay in cooperating with her requests for information needed to identify individual defendants and effectuate timely service. (*See generally* Pl.'s Reply Br. [ECF No. 42].)

## II. ANALYSIS

### A. Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).

An amendment is considered futile if the proposed claims would be barred by the applicable statute of limitations, and leave to amend can be denied on that basis. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). Federal Rule of Civil Procedure Rule 15(c)(1), however, provides that an amended complaint—including one that names new parties—relates back to the original complaint for purposes of the statute of limitations in the following circumstances:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; [and]

> (C)…within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The plaintiff has the burden to demonstrate that the requirements of Rule 15(c) are satisfied. *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989).

Here, it is undisputed that the two-year statute of limitations applicable to Siler's claims expired before she filed the pending motion to amend, so she must demonstrate that the requirements of Rule 15(c) are satisfied for her proposed SAC to relate back to the Original Complaint. *Pittman*, 209 F.3d at 317; *W. Contracting Corp.*, 885 F.2d at 1200. Siler's first two complaints sued three defined Doe defendant groups: unidentified Wexford medical personnel, unidentified WVRJ correctional personnel, and unidentified WVRJ supervisory personnel. She now seeks to refine those categories based on new information obtained from Defendants' records and substitute the newly identified names of individual defendants for the previously pleaded Doe defendants. (*See* ECF No. 31; Pl.'s Reply Br. at 2.) There is no dispute that the claims alleged against the newly named defendants in Siler's proposed SAC arise from the same "conduct, transaction, or occurrence" set forth in her first two complaints. Wexford and WVRJA oppose the amendment on futility grounds, arguing that Siler's attempt to add newly named defendants does not relate back to the Original Complaint. (*See generally* Wexford's Br.; WVRJA's Br.)

As another court in this district recently concluded, "an amendment naming a previously unnamed John Doe defendant can satisfy Rule 15(c)(1)(C)'s conditions for relation

back" under Fourth Circuit precedent. *Lynch v. A & A Exec. Transp. Servs, Inc.*, No. 3:24-cv-81, 2025 WL 1085796, at *4 (W. D. Va. April 10, 2025) (emphasis omitted). The Fourth Circuit has "rejected formalism in evaluating 'mistake' under Rule 15(c)" and has clarified that "the 'mistake' language is textually limited to describing *the notice* that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place," rather than focusing on the reasons a plaintiff did not name the correct party in its previous pleadings. *Robinson v. Clipse*, 602 F.3d 605, 609–10 (4th Cir. 2010) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 470–71 (4th Cir. 2007)). In other words, Rule 15(c)'s "relation-back" inquiry focuses on whether the newly added party "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it." *Goodman*, 494 F.3d at 471 (emphasis omitted). Additionally, the Fourth Circuit has made clear that the 90-day service period provided by Federal Rule of Civil Procedure 4(m)—and any extension granted under the Rule—is the proper "limitations period" for purposes of assessing whether the newly named party received notice of the claim as required under Rule 15(c). *See Robinson,* 602 F.3d at 608; *McGraw v. Gore*, 31 F.4th Cir. 844, 851–52 (4th Cir. 2022).

Wexford claims that the proposed SAC does not relate back because the three named Wexford employees Siler seeks to add—Dr. Bruce St. Amour, Elizabeth Martin, and Louisa Conn—were not "named, described, referenced, or otherwise identified . . . in any capacity, individually or as part of any role-specific Doe description" in Siler's previous complaints. (Wexford's Br. at 2.) Wexford contends that these defendants "are being added, for the first time, after the statute of limitations has run" and, consequently, that Siler cannot establish that

the three defendants "knew or should have known the action would have brought against them but for a mistake concerning their identity." (*Id.* at 6.) Siler counters that these three defendants were previously identified through the role-specific Doe category, "Wexford medical providers," identified in the Original Complaint (*see* Compl. ¶ 5) and the FAC (*see* FAC ¶ 5). (Pl.'s Reply Br. at 4.) Wexford further argues, and WVRJA joins in their position, that the claims against the newly named individual defendants do not relate back for purposes of Rule 15(c)(1)(C), because the names were originally omitted due to Siler's lack of knowledge rather than from mistaken identity. (Wexford's Br. at 5–6; WVRJA's Br. at 5–6.)

The court finds Defendants' arguments unpersuasive. First, the court disagrees with Wexford's position that the three named defendants were never identified through the role-specific Doe categories in Siler's previous pleadings. In support of her motion, Siler states that Defendants' records allowed her to identify Dr. Bruce St. Amour as the Wexford medical provider who conducted Ms. Pugh's post-hospital assessment on July 8, 2024, and Ms. Martin and Ms. Conn as the Wexford employees associated with Ms. Pugh's medication-related records and responsibilities at WVRJ during this period of incarceration. (Pl.'s Reply Br. at 6.) These three Wexford medical providers fall squarely within the Wexford "John and Jane Doe Medical Provider" categories identified in Siler's previous two complaints and coincide with the July 7–12, 2024 period of medical care administered by the unidentified medical providers, also set forth in both complaints. (*See* Compl. ¶¶ 5, 36–47; FAC ¶¶ 5, 28–39.) Accordingly, Siler *has* provided a basis to demonstrate that these three individuals fall within the category of Wexford Doe defendants previously identified in Siler's pleadings and that the claims against them are not being added for the first time in the proposed SAC.

The court also disagrees with Wexford and WVRJA's position that Siler's Doe substitutions cannot satisfy the relation-back requirement because she lacked knowledge of the defendants' identities rather than having made a mistake regarding their identities. As the Fourth Circuit has clarified, "mistake" under Rule 15(c) does not textually limit the reasons for a plaintiff's failure to name the defendant in its initial pleadings. *See Robinson*, 602 F.3d at 609–10. Instead, the Fourth Circuit has instructed courts to focus on whether the newly named defendant "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it." *Goodman*, 494 F.3d at 471 (emphasis omitted); *see also Lynch*, 2025 WL 1085796, at *5–6 (holding that the plaintiff's amended complaint substituting an unnamed Doe bus driver with the true name of the bus driver related back because the newly named defendant was served within the Rule 4(m) service period).

Here, the Rule 4(m) deadline was set to expire on September 3, 2026. On August 22, 2026, Siler filed the present motions and included a proposed SAC listing the newly named individual defendants. (*See* ECF Nos. 31–32.) For the reasons stated below, the court intends to grant Siler an extension of time to effect service. The defendants whom Siler seeks to serve, therefore, will have received notice within the appropriate limitations period—the 90-day service period and any Rule 4(m) extension granted by the court. *See Robinson,* 602 F.3d at 608; *McGraw*, 31 F.4th at 851–52 ("Relation back is allowed, in other words, so long as the added defendant had notice within the 90 days–or any 'good cause' extension–allowed under Rule 4(m)."). Siler's window to demonstrate that these defendants received notice within the Rule 4(m) service period has not yet expired. Accordingly, "the liberal amendment policies of the Federal Rules favor relation-back." *Goodman*, 494 F.3d at 471.

WVRJA further claims that the proposed SAC will not cure the defects in Siler's claims against WVRJA as argued in its motion to dismiss (ECF No. 23) and should be denied as futile on that ground. (WVRJA's Br. at 6–8.) "District courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Alrammah v. Wormuth*, No. 5:24-cv-00016, 2025 WL 974109 (W.D. Va. March 31, 2025) (quoting *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021)). To survive Rule 12(b)(6) scrutiny, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the salient question is "whether in the light most favorable to [the plaintiff] the amended complaint states any valid claim for relief." *Ford v. Anderson Cnty.*, 102 F.4th 292, 318 (5th Cir. 2024). Here, WVRJA's argument addresses only the *Monell* and state-law claims alleged against WVRJA in Counts II, III, and IV and does not address Siler's claims against Wexford in Count II or the Wexford and WVRJ individual defendants in Counts I, III, and IV. Because Siler's proposed SAC is not plainly deficient as a whole, the court does not find it appropriate to deny leave to amend on the basis of futility. WVRJA may reassert its arguments, if it so chooses, in a renewed responsive pleading to Siler's SAC, at which time the court will address the sufficiency of the claims WVRJA seeks to dismiss and the merits of any affirmative defenses it raises.[2]

Finally, Wexford maintains that if Siler is permitted to amend her complaint and add the newly named defendants, the amendment will impose a "real and avoidable burden . . . on

---

[2] But to the extent WVRJA maintains that Siler's survivorship claim is time-barred by the one-year statute of limitations set forth in Va. Code § 8.01-243.2, the court notes that the same argument has been rejected under similar circumstances. *See Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-00003, 2014 WL 2002227, *6 (E.D. Va. May 15, 2014) (holding that § 8.01-243.2's one-year statute of limitations applicable to actions filed on or behalf of confined prisoners does not apply to actions filed by the administrator of an inmate's estate on behalf of the decedent's beneficiaries).

Wexford that timely inclusion of the individuals would not have created." (Wexford's Br. at 6.) Specifically, Wexford cites its previous responses to Siler's pleadings and claims that adding the three new defendants will require "separate representation, individual responsive pleadings, and expanded discovery directed at conduct attributed to people who have had no opportunity to participate in this case to date." (*Id.*) The court does not agree that these circumstances justify denying Siler leave to amend.

In this case, Siler's proposed SAC is virtually identical to the claims, events, legal theories, and groups of defendants underlying her first two complaints. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."); *see also United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56, 62 (E.D. Va. 2016) ("[T]he similarity between the Original Complaint and the amendments further persuade the Court of the absence of prejudice."). The addition of the individually named Doe substitutes does not change the nature of the claims or legal theories which Wexford has already litigated on behalf of its other Wexford employees, and the records attached to the parties' briefs suggest that Wexford has known the identities of the individual employees on duty during the relevant period of Ms. Pugh's incarceration since before this litigation arose. (*See* Siler Decl. ¶¶ 2–5.) Moreover, the case is still in the early stages of litigation. The parties have not yet set a trial date, and the parties remain in the pleading and service stages. *See Halliburton Co.*, 315 F.R.D. at 62 ("Defendants face no looming deadline of trial that might prevent them from adequately responding to the amended complaint.") For these reasons, the court finds that Siler's proposed amendments will not result in undue prejudice to Wexford.

Accordingly, because Siler's claims against the newly identified defendants appear to relate back to the date of the Original Complaint, and the defendants will not suffer prejudice if the proposed amendments are permitted, the court will grant Siler's motion for leave to amend.

**B. Motion for Extension of Time and for Limited, Expedited Identity and Service Disclosures**

Next, Siler requests (i) an extension of time to serve the individual defendants identified in her proposed SAC and any later-substituted Doe defendants identified through discovery and (ii) a period of limited, expedited discovery to obtain information necessary to identify and serve the remaining Doe defendants. WVRJA argues that Siler is not entitled to either form of relief. (WVRJA's Br. at 8–11.)

Federal Rule of Civil Procedure 4(m) governs the time for service of process and provides that a defendant must be served with a summons and a complaint within 90 days after the complaint is filed. *See* Fed. R. Civ. P. 4(m). If the plaintiff fails to serve the defendant within the specified time, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See id.* The Fourth Circuit has interpreted Rule 4(m) to mean that "a district court possesses discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and summons even absent a showing of good cause by the plaintiff." *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022). But "if the plaintiff is able to show good cause for the failure [to serve], then the court *must* grant the extension." *Id.*

As to Siler's request for expedited discovery, Federal Rule of Civil Procedure 26(d)(1) provides that parties may not seek discovery prior to a Rule 26(f) conference "except . . . when

authorized by these rules, by stipulation, or by court order." *See* Fed. R. Civ. P. 26(d)(1). The Fourth Circuit has not established a standard for evaluating requests for expedited discovery, *see Merkle v. Medtronic, Inc.*, No. SAG-25-3737, 2026 WL 113474, at *2 (D. Md. Jan. 15, 2026), but "[i]n rare circumstances, the court may authorize expedited discovery upon a showing of good cause." *Thornock v. JES Found. Repair & Groundworks*, No. 7:23-cv-638, 2023 WL 12012073, at *1 (W.D. Va. Oct. 25, 2023) (cleaned up).

WVRJA argues that Siler has not established good cause for an extension of time to serve or for expedited discovery because she received records listing the names of the individual defendants she now seeks to add prior to initiating this lawsuit but did not assert claims against these individuals until the applicable limitations period had expired. (*See* WVRJA's Br. at 10.) Siler counters that she could not, in good faith, have asserted blanket claims against all the individuals listed in these broad records without more information, because "Section 1983 requires personal responsibility." (*See* Pl.'s Reply Br. at 12.) Moreover, Siler claims that Defendants' exclusive control over the information she seeks created an "information gap" that delayed her identification and service of Doe substitutes and justifies the authorization of a limited discovery period. (*Id.* at 13–15.)

"To establish good cause for an extension, a plaintiff must show diligence." *Kiethley v. Hyrvniak*, No. 3:25-cv-00086, 2026 WL 263300, at *2 (W.D. Va. Feb. 2, 2026) (citing *Gelin*, 35 F.4th at 218). Courts generally find good cause "when the failure of service is due to external factors, such as the defendant's intentional evasion of service." *Id.* (quoting *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019)). In evaluating good cause for expedited discovery requests, some courts in this Circuit consider factors such as the breadth of the requested discovery,

the party's reasons for moving for expedited discovery, and the burden on the party to comply. *See Merkle*, 2026 WL 113474, at *2.

Although the court retains discretion to grant Siler an extension absent a showing of good cause, the court finds that Siler *has* demonstrated ample good cause to warrant an extension of time to effect service under Rule 4(m)—and a period of limited, expedited discovery. In response to Siler's April 2025 FOIA request, WVRJA provided Siler with access to records that identified the names of the individual defendants she now seeks to substitute for the Doe defendants. (*See* Siler Decl. ¶¶ 2–6; ECF Nos. 41-1, 41-2.) WVRJA contends that Siler should have filed her initial complaint against all individuals listed in the records and that her failure to do so represents a lack of diligence. (WRVJA's Br. at 10.) But Siler's decision not to allege claims against *all* persons recorded to have worked "somewhere in the facility during one of twenty-six shifts" during Ms. Pugh's incarceration was well-reasoned. (Pl.'s Reply Br. at 12.) Siler notes that these records were broad, identified the defendants only by first initial and last name, and "did not identify which person personally observed Ms. Pugh, received reports about her condition, communicated with medical personnel, performed or supervised a particular electronic or physical check, made a medical-line or refusal designation, or failed to escalate care." (Siler Decl. ¶ 5.) Further, Siler claims that the records "withheld approximately six hours of surveillance footage and substantial inmate, telephone, death-investigation, and medical-related material." (*Id.* ¶ 3.) Defendants did not supplement these rosters with "conduct-specific" security round records including critical information that identified the housing units and bunks to which Ms. Pugh had been assigned during the relevant period of her incarceration, until the parties conferred on August 17, 2026. (*Id.* ¶ 17.) Siler filed her

motions and the proposed SAC naming the newly identified Doe substitutes just five days after this meeting.

Moreover, Siler's briefs and the parties' exhibits document her diligent efforts to obtain this information earlier than the August 17, 2026, meeting. She first requested the records produced in April 2025 through a FOIA request. (*Id.* ¶ 2; *see* ECF No. 41-1.) These records were not sufficiently detailed for Siler to identify which defendants were relevant to Siler's claims. (*Id.* ¶¶ 5, 17.) On July 13, 2026—the same day that Siler filed her FAC—Siler's counsel emailed counsel for Wexford and WVRJA to request a Rule 26(f) conference, circulated Plaintiff's own disclosures and proposed discovery plan, and made repeated attempts to schedule this conference despite Defendants' purported delays. (Siler Decl. ¶¶ 7–17.) The parties conferred on August 4, 2026, for an initial meeting regarding disclosures and again, on August 17, 2026. (*Id.* ¶ 11.) On August 7, 2026, Siler sent a letter to WVRJA's counsel requesting information specific to Ms. Pugh and a defined list of employees responsible for Pugh's care during the relevant period of her incarceration. (*Id.* ¶¶ 12–15.) Siler contends that she has continued to seek identity and service information for the individual defendants but that Wexford and WVRJA have not yet provided the full scope of the identity and conduct-specific information she requested and have declined to accept service on behalf of certain individual defendants or provide the necessary information for Siler to effectuate that service. (*Id.* ¶¶ 20–29.)

The court, therefore, finds that the reasons Siler puts forth in support of her motion for an extension of time to serve and request for limited, expedited discovery constitute good cause. Siler has diligently attempted to acquire information to assist with refining the list of

defendants against whom she asserts her claims and to effectuate service on those defendants. Further, the timeline set forth in Siler's briefs and accompanying exhibits demonstrates that Siler's delays stem from the challenges posed by Defendants' exclusive control over the information essential to identity and service. Throughout her communications with opposing counsel, Siler emphasized the urgency of her requests and the impending September 3, 2026, Rule 4(m) deadline, but Defendants did not produce the full extent of the requested information and instead produced only certain information in piecemeal fashion. (*Id.* ¶ 21; Pl.'s Reply Br. at 15.) Accordingly, the court finds that Siler's diligence and the Defendants' exclusive control over the information she seeks constitute "good cause" for granting an extension under Rule 4(m). For the same reasons, the court finds good cause for permitting a period of limited, expedited discovery.

## III. CONCLUSION

For the reasons stated, the court will grant Siler's motion to amend her complaint and her motion for extension of time to serve the defendants. The court will authorize the parties to engage in a period of limited, expedited discovery to be completed **within 90 days** of the entry of the accompanying Order and will refer matters pertaining to the scope of this discovery to the assigned Magistrate Judge. The court will grant Siler leave to file **one** second amended complaint, reflecting the identities of the newly named defendants and any Doe defendants later identified through the authorized period of discovery, **within 14 days** of the close of the discovery period. The court will also grant Siler an extension of time to serve the defendants named in the second amended complaint and require that any newly named defendants be served **within 45 days** of filing the amended complaint.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of November, 2026.

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE